```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF OKLAHOMA

BENTLY J. FERLAND,                )
                                  )
             Plaintiff,           )
                                  )
v.                                )   Case No. CIV-18-130-KEW
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
             Defendant.           )
```

**OPINION AND ORDER**

Plaintiff Bently J. Ferland (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner=s decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 20 years old at the time of the ALJ's decision.

Claimant completed his high school education and attended vocational-technical training for computer augmented drafting and designing. Claimant has never been employed. Claimant alleges an inability to work beginning September 22, 2003 due to limitations resulting from autism and learning disorders.

**Procedural History**

On April 24, 2015, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. ' 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 6, 2017, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On April 28, 2017, the ALJ issued an unfavorable decision. On April 9, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity

4

("RFC") to perform a full range of work at all exertional levels with non-exertional limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) rejecting the opinions of a psychologist; and (2) rejecting the opinions of the reviewing state agency physicians regarding Claimant's mental functioning limitations.

**Evaluation of the Psychologist Opinion**

In his decision, the ALJ determined Claimant suffered from the severe impairment of autistic spectrum disorder and a learning disorder. (Tr. 14). The ALJ determined Claimant could perform a full range of work at all exertional levels but with the non-exertional limitations of performing simple, repetitive tasks, could relate to supervisors and co-workers only superficially, and could not work with the public. (Tr. 16). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of dishwasher and electronic assembler, both of which were found to exist in sufficient numbers in the regional and national economies. (Tr. 22). As a result, the ALJ found Claimant was not under a disability since April 24, 2015, the date of the filing of the application. Id.

Claimant contends the ALJ improperly ignored and rejected the opinion of Melissa Morris, a certified school psychologist. Ms. Morris completed a psychological evaluation on Claimant dated October 7, 2014 at the request of a teacher because he struggled with task completion and was not making the progress expected. Claimant was attending an alternative school. She found Claimant had problems with his stomach which required several procedures and medication. He had difficulty making friends and often gets up at night. (Tr. 258).

Ms. Morris administered various standard testing to Claimant. His overall intellectual ability was found to be in the low average range of others his age. He scored in the average range of standard scores in the Phonemic Awareness and Broad Reading testing. Claimant's Working Memory and Thinking Ability were within the average range. (Tr. 259).

Claimant's Verbal Ability was rated in the low average range. Ms. Morris found he would find age level verbal communication, knowledge, and comprehension tasks "very difficult." Claimant's Cognitive Efficiency was found to be in the low range for his age with his cognitive processing considered "mildly delayed" such that he would find similar age level tasks very difficult.

6

Mathematics Reasoning was rated in the low range for Claimant's age. It was considered "moderately delayed" with Ms. Morris finding Claimant's "very limited mathematics reasoning may be related to his limited knowledge and comprehension and working memory capacity." Claimant's Processing Speed was in the low range and was mildly delayed on age appropriate tasks. His Math Calculation Skills were in the "very low range" for Claimant's age and were, again, mildly delayed for his age. Claimant's Visual-Auditory Learning, Writing Samples, and Academic Applications were all delayed. (Tr. 260-61).

Ms. Morris administered the Devereux Scales of Mental Disorders and found Claimant's Total Scale T score was within the average range but his score was elevated in the areas of Internalizing and on the Anxiety and Depression scales. (Tr. 261). He scored in the Very Likely range on the Autism scale. He displayed significant social skills deficits. (Tr. 263).

Ms. Morris concluded Claimant required more support than could be provided in the general education setting. (Tr. 257). Claimant was placed on an Individualized Education Program ("IEP") in November of 2014. (Tr. 275). He failed many regular classes. (Tr. 288). He continued to struggle with academic skills and

7

failed all classes with the exception of science. He was provided a quite area to work with repeated instruction and several chances to redo work. "His emotional needs are too great and adversely affect his classroom performance." (Tr. 289).

The group monitoring the IEP noted Claimant's attendance of an alternative school in the Fort Gibson Public Schools. They found Claimant's behavior ratings all fell in the area of concerns with social withdrawal, depression, and affective problems. His scores on the GARS 2 placed him in the very likely range for autism by both school and home. He preferred to be alone, won't talk, was withdrawn, worried, failed to finish tasks, struggled with concentration, and was functioning poorly in school. He did a good job with computers and liked to be a businessman and make money from home. His academic strengths were reading fluency and writing fluency. His cognitive strengths appeared to be auditory working memory and sound blending. (Tr. 290).

Ms. Morris noted that accommodations for Claimant's limitations in processing speed might include providing extended time, reducing the quantity of work required (breaking large assignments into two or more component assignments), eliminating or limiting copying activities, and increasing "wait" times after

8

questions are asked as well as after responses are given. (Tr. 267).

The ALJ addressed Ms. Morris' findings by stating

> In terms of the claimant's alleged Asperger's syndrome and learning disability, the claimant was in alternative education classes in the 12th grade and was under an IEP (individualized education plan). He was in all resource classes. . . . This placement was determined after a psychological evaluation by Melissa Morris, M.Ed. in October 2014. . . .

(Tr. 18).

The ALJ failed to discuss any of Ms. Morris' findings on Claimant's processing limitations or cognitive deficiencies and the effects these conditions have upon Claimant's ability to engage in basic work activities. Soc. Sec. R. 06-03p notes that in deciding disability, the regulations require the Commissioner to consider medical and other evidence. 20 C.F.R. §§ 404.1512, 404.1513, 416.912, 416.913. Evidence to be considered includes opinion evidence from "acceptable medical sources," from "other" medical sources, from "non-medical sources" who have contact with the claimant in their professional capacity, and from "other" nonmedical sources such as spouses, parents, friends, and neighbors. While Claimant characterizes Ms. Morris as a "non-medical source", the regulations consider "licensed or certified psychologists" including "school psychologists" as "acceptable

medical sources." Soc. Sec. R. 06-03P, 2006 WL 2329939, *1 (August 9, 2006). Whether Ms. Morris was a "non-medical source" or an "acceptable medical source", the ALJ was required to discuss the opinion, state the weight it was given in the decision, and determine its effect upon his limitations. This Court specifically rejects as an impermissible *post hoc* explanation by Defendant that Ms. Morris' opinions were effectively rejected or addressed in any way through the circuitous avenue of adopting the opinions of other medical professionals. No such discussion was contained in the decision. The ALJ simply failed to address the significant and relevant opinion evidence offered by Ms. Morris. He shall do so on remand.

**Consideration of Mental Limitations**

Claimant also asserts the ALJ failed to address the mental functional limitations found by the reviewing state agency physicians. On January 11, 2016, Dr. Laura Eckert provided a functional analysis which found Claimant was markedly limited in the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. She was moderately limited in the areas of the ability to work in coordination with or in proximity to others without being distracted by them, ability to

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to ask simple questions or request assistance, ability to get alone with co-workers or peers without distracting them or exhibiting behavioral extremes, ability to maintain social appropriate behavior and to adhere to basic standards of neatness and cleanliness, ability to respond appropriately to changes in the work setting, and ability to set realistic goals or make plans independently of others. (Tr. 65-67). Dr. Eckert concluded Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, could adapt to a work situation with forewarning in a reasonably stable and familiar work environment. (Tr. 67). Dr. Bruce Lochner made consistent findings in his assessment dated March 23, 2016. (Tr. 79-81).

The ALJ recited these physicians' findings and stated that he incorporated them in his RFC assessment. He also stated he gave them "diminished weight" because portions of the opinions were issued "in compliance with Regulations no longer in effect. . . ." (Tr. 20). Despite these findings, the ALJ failed in include any restrictions on the ability to understand, remember, or carry out

detailed instructions in the RFC.  (Tr. 16).  The ALJ must evaluate every medical opinion in the record.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must also explain in the decision the weight given to the medical opinions.  Soc. Sec. R. 96-6p, 1996 WL 374180.  An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." <u>Haga v. Astrue</u>, 482 F.3d 1205, 1208 (10th Cir. 2007).  The failure to include the additional restriction was not harmless since the ALJ identified jobs which Claimant could ostensibly perform with a reasoning level of R2 which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles*, App. C, 1991 WL 688702.  The additional limitation upon the ability to understand and carry out detailed instructions is in direct conflict with the requirements of R2 occupations.  If the restriction on detailed instructions were excluded from Claimant's RFC, he would not be able to perform the identified jobs.  On remand, the ALJ shall consider the limitation in the ability to understand and carry out detailed instructions found by the state agency physicians, include the limitation in his RFC assessment, or explain the basis for excluding the limitation.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. ' 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 30th day of September, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE